**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 06-32871

ROBERT LEE THOMPSON
EVELYN MINOR THOMPSON
d/b/a EXACT TAX OF NEWPORT

        Debtors

**MEMORANDUM ON MOTION FOR RELIEF
FROM VOID JUDGMENTS FOR LACK OF SUBJECT
MATTER JURISDICTION**

**APPEARANCES:**    Robert Lee Thompson
                     Evelyn Minor Thompson
                      840 Patience Road
                      Bybee, Tennessee 37713
                      *Pro Se* Debtors

                      BAILEY, ROBERTS & BAILEY
                      N. David Roberts, Jr., Esq.
                      Post Office Box 2189
                      Knoxville, Tennessee 37901
                      Chapter 7 Trustee

                      TAYLOR, REAMS, TILSON & HARRISON
                      H. Scott Reams, Esq.
                      Post Office Box 1799
                      Morristown, Tennessee 37816-1799
                      Attorneys for Jefferson Federal Bank

                      WINCHESTER, SELLERS, FOSTER & STEELE, P.C.
                      J. Michael Winchester, Esq.
                      Post Office Box 2428
                      Knoxville, Tennessee 37901-2428
                      Attorneys for First Tennessee Bank

      RICHARD F. CLIPPARD, ESQ.
      UNITED STATES TRUSTEE, REGION 8
       Patricia C. Foster, Esq.
       Suite 114, Howard H. Baker, Jr. United States Courthouse
       800 Market Street
       Knoxville, Tennessee 37902
       Attorneys for the United States Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the following documents filed by the Debtors, acting *pro se*, on March 21, 2007: (1) "Motion for Relief From Void Judgments for Lack of Subject Matter Jurisdiction" (Motion for Relief from Judgments); (2) "Notice of Objection to Foreclosures"; (3) "Commercial Notice Appointment of Fiduciary Debtor"; (4) "Affidavit of Jefferson Federal Bank in making loan account #17515-0644 by Robert Lee and Evelyn Minor Thompson, agents for Robert Lee and Evelyn Minor Thompson, Vessels"[1]; and (5) "Affidavit Notice Denial of Signature and Denial of Damaged Party and Denial of Existence of Damaged Party."[2] Due to their lack of clarity and the court's desire to determine the specific relief sought by the Debtors through these various documents, the court scheduled a hearing on April 12, 2007. At this hearing, the Debtors, in response to several inquiries from the court regarding the relief they are seeking, responded, without further explanation, only that they were "standing on their paperwork." The court thereafter reserved its decision after directing Jefferson Federal Bank to file an affidavit concerning the details of its post-petition foreclosure sale of certain property of the estate.

Pursuant to the court's directive, on April 18, 2007, Jefferson Federal Bank filed the Affidavit of David M. Tilson, Trustee. Additionally, on April 18, 2007, Jefferson Federal Bank filed the following documents in response to those filed by the Debtors: (1) "Response of Jefferson Federal Bank to 'Affidavit Notice Denial of Signature and Denial of Damaged Property and Denial of Existence of Damaged Property[']"; (2) "Response to Pleading Styled 'Affidavit of Jefferson Federal Bank in Making Loan Account No. 17515-0644 by Robert Lee and Evelyn Minor

---

[1] Notwithstanding its title, this document is not an affidavit signed by a representative of Jefferson Federal Bank. Rather, this document is signed by the Debtors.

[2] On April 19, 2007, the Debtors also filed a letter asking the court to "enter" in the record a copy of a promissory note in the amount of $177,853.70 payable to Jefferson Federal Bank from Gary Allan Heath.

Thompson, Agents for Robert Lee and Evelyn Minor Thompson, Vessels' Filed by the Debtors"; (3) "Response to Debtors' Pleading Styled 'Motion for Relief from Void Judgments for Lack of Subject Matter Jurisdiction'"; and (4) "Response to 'Commercial Notice Appointment of Fiduciary Debtor.'" On April 19, 2007, Jefferson Federal Bank filed a Response to Debtors' 'Notice of Objection to Foreclosures.'"[3]

After reviewing the documents filed by the Debtors and Jefferson Federal Bank, the court finds that the Motion for Relief from Judgment is the only document actually seeking a redressable action or relief from the court. The rest of the documents contain allegations and statements without requesting relief, request unascertainable relief, or are simply not understood by the court and will therefore be deemed to have been filed by the Debtors solely in support of the Motion for Relief from Judgment. Based upon the following reasons, the Motion for Relief from Judgment shall be denied.

## I

The Debtors filed the Voluntary Petition commencing their bankruptcy case under Chapter 7 of the Bankruptcy Code on December 1, 2006. At the time they filed their petition, the Debtors were represented by Attorney John H. Fowler, who represented them in all aspects of their bankruptcy case until he was permitted to withdraw on March 22, 2007.

---

[3] Also on April 19, 2007, Jefferson Federal Bank filed a motion requesting retroactive relief from the automatic stay with regard to the interest of Mrs. Thompson in the foreclosed real estate to "validate the results of the foreclosure sale." The reasons supporting the filing of this motion are set forth therein but do not need to be addressed by the court within the context of the present Memorandum. The foreclosure action taken by Jefferson Federal Bank involved property of the estate. The interest of the Debtors in this property is not at issue. Nevertheless, because no party in interest, including the Debtors, objected to the requested relief, the court signed the order uploaded by Jefferson Federal Bank granting the requested stay relief, and the same was entered on May 8, 2007. *See* E.D. TENN. LBR 9013-1(h).

Jefferson Federal Bank is a creditor of the Debtors by virtue of (1) a promissory note dated August 20, 2003, in the amount of $48,000.00, secured by a Deed of Trust dated August 20, 2003, pledging real property owned by the Debtors located at 1728 West First North Street, Morristown, Tennessee, and at 740 Knob Creek Road, Bybee, Tennessee; (2) a promissory note dated May 13, 2004, in the amount of $60,000.00, secured by a Deed of Trust dated May 13, 2004, pledging real property owned by the Debtors located at 840 Patience Way, Bybee, Tennessee, improved by a 1996 Peach State mobile home; and (3) a promissory note dated September 17, 2004, in the amount of $50,000.00, secured by a second mortgage Deed of Trust dated September 17, 2004, pledging the real property owned by the Debtors located at 840 Patience Way, Bybee, Tennessee, improved by their 1996 Peach State mobile home.

The Debtors listed the following tracts of real property in their statements and schedules filed on December 1, 2006: (1) house and land located at 840 Patience Road, Bybee, Tennessee, valued at $253,300.00 and subject to no secured claims; (2) house and lot located at 2609 Knob Creek Road, Bybee, Tennessee, and warehouse with unspecified acreage located at 1728 West First North Street, Morristown, Tennessee, valued at $140,000.00 and subject to secured claims of $42,331.95; (3) 11.2 acres located at 840 Patience Road, Bybee, Tennessee, valued at $33,000.00 and subject to secured claims of $12,386.69; and (4) commercial church building and 100 acres located at 264 E. Main Street, Newport, Tennessee, valued at $400,000.00 and subject to claims of $90,000.00. Per Schedule D filed by the Debtors with their petition, Jefferson Federal Bank held claims encumbering its collateral totaling $158,185.65. The Debtors do not list any outstanding or potential

claims against Jefferson Federal Bank in their Statement of Financial Affairs or Schedule B filed with their petition.[4]

On January 25, 2007, Jefferson Federal Bank, as is permitted by E.D. Tenn. LBR 9013-1(g), filed a Motion for Entry of Agreed Order asking the court to approve an agreed order authorizing it to proceed with a scheduled foreclosure of its liens encumbering the various parcels of real estate securing the promissory notes executed by the Debtors. The Agreed Order, which was approved for entry by the Chapter 7 Trustee and Jefferson Federal Bank, was entered on January 30, 2007, and was thereafter served on the Debtors and their attorney, who took no exception thereto. A foreclosure sale was subsequently conducted on February 8, 2007, and the tracts of real property securing Jefferson Federal Bank's claims were purchased by two separate bidders for a total sale price of $230,500.00, resulting in surplus proceeds of $58,729.42 after satisfaction of Jefferson Federal Bank's secured claim, accrued interest, expenses of the sale, and pre-foreclosure attorneys' fees. TILSON AFF. at ¶ 7.

On February 22, 2007, the Debtors, acting *pro se*, filed a document entitled "Administrative Notice and Demand for Extension of Time," (Administrative Notice), stating that in August 2006, they tendered, as payment in full of the amounts owed to Jefferson Federal Bank by the Debtors, a promissory note in the amount of $177,853.70 payable to Jefferson Federal Bank from Gary Allan Heath, an individual residing in Ohio (Heath Promissory Note). The Debtors argued that the Heath Promissory Note was sent to Jefferson Federal Bank via certified mail, that Jefferson Federal Bank

---

[4] Paragraph 4 of their Statement of Financial Affairs required the Debtors to list "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of [their] bankruptcy case" while paragraph 21 of Schedule B requires that the Debtors list "[o]ther contingent and unliquidated claims of every nature . . . ."

received and signed for this document, which is still in its possession, and that Jefferson Federal Bank accepted the Heath Promissory Note as payment in full of their outstanding obligations but did not discharge their debt.[5] Thereafter, on March 21, 2007, the Debtors filed the Motion for Relief from Judgments and other supporting documents.

Through its responsive documents, Jefferson Federal Bank acknowledges that it received the unsolicited Heath Promissory Note on September 1, 2006, which it did not accept in payment of the Debtors' obligations, and that it notified Mr. Heath, the Debtors, and their bankruptcy attorney of this fact in a letter dated the same day, September 1, 2006. TILSON AFF. AT ¶ 5; AFF. EX. C.

## II

The Debtors' first argument in support of their Motion for Relief from Judgments is a lack of both subject matter jurisdiction and personal jurisdiction over them. Jurisdiction over bankruptcy matters is exclusive to the federal courts pursuant to 28 U.S.C. § 1334, which provides as follows:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
>
> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

---

[5] This document also makes various allegations concerning the Debtors' former counsel, who, as previously discussed, was allowed to withdraw from representation of the Debtors on March 22, 2007.

>(c)(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
>
>(d) Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.
>
>(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction –
>
>>(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and
>>
>>(2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

28 U.S.C. § 1334 (2006). This limited subject matter jurisdiction may not be waived, and it may be raised at any time. *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630 (6th Cir. 1992); *Robinson v. Mich. Consol. Gas Co., Inc.*, 918 F.2d 579, 582 (6th Cir. 1990); *Matuscak v. United States Bankr. Ct. Clerk (In re Rini)*, 782 F.2d 603, 608 (6th Cir. 1986) ("It is well established that parties cannot somehow waive jurisdictional objections, nor can they consent to the jurisdiction of a court when that court lacks jurisdiction over the subject matter of their dispute.").

Section 1334 is supplemented by 28 U.S.C. § 157 (2006), which allows bankruptcy courts to hear "core proceedings," encompassing all actions arising under title 11 and/or arising in a case

under title 11. Included among those proceedings designated "core" are "matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), "determinations of the validity, extent, or priority of liens," 28 U.S.C. § 157(b)(2)(K), and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims," 28 U.S.C. § 157(b)(2)(O), all of which the Debtors argue are implicated. Simply stated, a core proceeding "invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992). Cases "under title 11" refer to the actual bankruptcy cases "commenced in a federal district court or bankruptcy court with the filing of a petition [initiating the bankruptcy]." *Robinson*, 918 F.2d at 583. "Arising in" and "arising under" actions include matters "that arise only in bankruptcy cases" such as adversary proceedings and contested matters concerning issues contained in or provided for by the Bankruptcy Code. *Dally v. Bank One, Chicago, N.A. (In re Dally)*, 202 B.R. 724, 727 (Bankr. N.D. Ill. 1996).

With respect to personal, or in personam, jurisdiction, the Supreme Court has stated that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l. Shoe Co. v. Washington*, 66 S. Ct. 154, 158 (1945). The Sixth Circuit, expounding upon this directive, has propounded the following standard for determining if a court has in personam jurisdiction over a party:

> (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant

>or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003) (quoting *S. Mach. Co., Inc. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Clearly, a party who voluntarily files a bankruptcy petition submits to the personal jurisdiction of the bankruptcy court, which has subject matter jurisdiction over all bankruptcy matters. *See* 28 U.S.C. § 1334; *Martens v. Countrywide Home Loans (In re Martens)*, 331 B.R. 395, 397 (B.A.P. 8th Cir. 2005) (stating that the debtors "submitted themselves, voluntarily, to the jurisdiction of the bankruptcy court when they filed their Chapter 7 bankruptcy petition"); *In re Blumeyer*, 297 B.R. 577, 582 (Bankr. E.D. Mo. 2003) ("by the filing of a voluntary petition under Title 11, the Debtor submitted his assets to the jurisdiction of the bankruptcy court"); *In re Yagow*, 60 B.R. 543, 545 (Bankr. D.N.D. 1986) (holding that "once a [debtor] files a voluntary bankruptcy petition, thereby submitting to the jurisdiction of the bankruptcy court, . . . then the [debtor] is deemed to have submitted himself to the bankruptcy court jurisdiction for all purposes. A voluntary debtor in bankruptcy cannot rely on the benefits afforded by the Bankruptcy Code without also being subjected to the consequences of the Bankruptcy Code."). By filing their Voluntary Petition on December 1, 2006, the Debtors submitted themselves to the jurisdiction of the bankruptcy court and to the requirements of the Bankruptcy Code.[6]

---

[6] In their Administrative Notice, the Debtors state that they "wanted no part of bankruptcy proceedings;" however, it is undisputed that the Debtors hired an attorney to represent them in the prosecution of their bankruptcy case; that, pursuant to the compensation disclosure statement filed by Mr. Fowler, the Debtors agreed to pay him $701.00 for representing them in their bankruptcy; that the Debtors provided their attorney, Mr. Fowler, with the information essential to the preparation and filing of their Voluntary Petition, Statement of Financial Affairs, and schedules; that the Debtors signed their Voluntary Petition, Statement of Financial Affairs, and schedules under penalty of perjury; and that they attended and participated in their meeting of creditors on January 9, 2007.

### III

The Debtors also appear to argue that the court did not have the authority to approve the proposed Agreed Order between the Chapter 7 Trustee and Jefferson Federal Bank, authorizing Jefferson Federal Bank to proceed with its foreclosure, which ultimately took place on February 8, 2007, because the Debtors were not a party to the Agreed Order and did not receive "a summons to attend the proceedings[.]" The Debtors' argument evidences a misunderstanding of the basic tenants of Chapter 7 as well as the duties and obligations of a Chapter 7 trustee.

The filing of a voluntary petition under any chapter of the Bankruptcy Code constitutes an order for relief and results in the creation of a debtor's bankruptcy estate, consisting of all legal and equitable interests of the debtor. in property as of the commencement of the case *See* 11 U.S.C. § § 301, 541(a) (2006). Additionally, at the commencement of a Chapter 7 case, a Chapter 7 trustee possessing various statutory duties and powers is appointed to administer the bankruptcy estate. *See* 11 U.S.C. §§ 323(a), 701, 702(d), 704 (2006).

Debtors are given the opportunity to exempt certain property interests, by virtue of 11 U.S.C. § 522, which provides, in material part:

> (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. . . .
>
> (2) Property listed in this paragraph is property that is specified under section (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
>
> (3) Property listed in this paragraph is—

11

>  (A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place; [and]
>
>  (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law[.]

11 U.S.C. § 522 (2006). Exempted property "is subtracted from the bankruptcy estate and not distributed to creditors . . . [to ensure that the debtor] retains sufficient property to obtain a fresh start[.]" *In re Arwood*, 289 B.R. 889, 892 (Bankr. E.D. Tenn. 2003) (quoting *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 792 (E.D. Tenn. 1998)). Therefore, exemptions, which are determined as of the date upon which the bankruptcy case is commenced, are construed liberally in favor of debtors. *In re Nipper*, 243 B.R. 33, 35 (Bankr. E.D. Tenn. 1999). In order to take exemptions, debtors are required to file a statement listing the property claimed as exempt, along with the amount of the claimed exemption and the statutory basis therefore. *See* FED. R. BANKR. P. 4003(a).[7]

---

[7] Section 522(b) is the "opt out" provision, allowing states to require the use of their own exemptions rather than the federal exemptions enumerated in § 522(d). Tennessee has elected to "opt out" of the federal exemptions, as codified in Tennessee Code Annotated section 26-2-112:

>  **Exemptions for the purpose of bankruptcy**. — The personal property exemptions as provided for in this part, and the other exemptions as provided in other sections of the Tennessee Code Annotated for the citizens of Tennessee, are hereby declared adequate and the citizens of Tennessee, pursuant to section 522(b)(1), Public Law 95-598 known as the Bankruptcy Reform Act of 1978, Title 11 USC, section 522(b)(1), are not authorized to claim as exempt the property described in the Bankruptcy Reform Act of 1978, 11 USC 522(d).

TENN. CODE ANN. § 26-2-112 (2000); *see also Rhodes v. Stewart*, 705 F.2d 159, 161-62 (6th Cir. 1983) (holding that Tennessee's "opt-out" statute is constitutional).

(continued...)

The Debtors filed their Voluntary Petition on December 1, 2006, and N. David Roberts, Jr., was duly appointed as Chapter 7 Trustee. Included within their statements and schedules is Schedule C - Property Claimed as Exempt, which evidences the property and equitable interests that the Debtors claimed as exempt and which were, without objection, excluded from the Debtors' bankruptcy estate. As is material to the issues raised herein, the Debtors claimed, subject to the limitations of the Tennessee Homestead Statute, a $12,500.00 exemption in their house and land located at 840 Patience Road, Bybee, Tennessee, valued at $253,300.00. *See* TENN. CODE ANN. § 26-2-301(e) (Supp. 2006).

One of the primary duties of the Chapter 7 trustee is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]" 11 U.S.C. 704(a)(1). As such, the Chapter 7 trustee "holds the exclusive right to assert a debtor's claim." *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 853 (6th Cir. 2002) ("The trustee stands in the shoes of the debtor and has standing to bring any action that the bankrupt could have brought had he not filed a petition for bankruptcy."). Correspondingly, when a Chapter 7 trustee succeeds to a debtor's pre-petition causes of action. the debtor no longer has standing to pursue them because they are property

---

[7](...continued)
Section 522 was considerably impacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), which applies to all bankruptcy cases filed on and after October 17, 2005, by expanding § 522(b)'s pre-existing requirements concerning a debtor's domicile and adding language exempting qualifying retirement funds from property of a debtor's estate. For the purposes of the "opt out" statute, however, BAPCPA did not alter application of § 522(b), nor did it render any of the prior case law concerning that subsection moot. Accordingly, all pre-BAPCPA statutes and cases relied upon by the court concerning this statute are applicable in this BAPCPA case.

13

of the debtor's bankruptcy estate. *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1126 (8th Cir. 1998).

In short,

> Chapter 7 is the bankruptcy vehicle for collecting, liquidating and distributing a debtor's assets. At filing, the Chapter 7 trustee is placed in charge of the debtor's interests in property and is provided the tools for collecting, liquidating, and distributing those interests. Chapter 7 does not contemplate that a debtor will retain any property interests, except those exempt and (with limited exceptions) those acquired after the filing of the bankruptcy petition.

*EconoLube N' Tune, Inc. v. Frausto (In re Frausto)*, 259 B.R. 201, 211 (Bankr. N.D. Ala. 2000).

Mr. Roberts, in his capacity as Chapter 7 Trustee, was charged with the exclusive authority to liquidate estate property in order to pay unsecured creditors. As such, he was well within his rights to enter into the Agreed Order allowing the continuation of Jefferson Federal Bank's foreclosure without obtaining the Debtors' consent. Similarly, he was not required to ensure that the Debtors were notified that he was entering into the Agreed Order. Further, the Agreed Order does not provide for the abandonment of Jefferson Federal Bank's collateral; rather, it expressly states that the Chapter 7 Trustee is not waiving any claim to excess proceeds. Because Mr. Roberts acted within his authority as Chapter 7 Trustee to approve the foreclosure sale, as well as enter into the Agreed Order authorizing the sale to proceed, the court has no reason to question his judgment and its entry of the January 30, 2007 Agreed Order was proper. The fact that the foreclosure sale realized almost $59,000.00 in surplus funds for the benefit of creditors clearly validates the Trustee's decision to allow the foreclosure sale to proceed.

# IV

The Debtors also appear to argue that the foreclosure of their properties was invalid and should be set aside because Jefferson Federal Bank was required to accept the Heath Promissory Note in satisfaction of their outstanding obligations and that this Note constituted an accord and satisfaction of the Debtors' obligations to Jefferson Federal Bank pursuant to Tennessee Code Annotated section 47-3-311 (2001), entitled "Accord and satisfaction by use of instrument." It also appears that the Debtors are arguing that Jefferson Federal Bank was required to accept the Heath Promissory Note in satisfaction of their obligations pursuant to Tennessee Code Annotated section 47-3-104 (Supp. 2006), which defines "Negotiable instrument" and -106 (2001), entitled "Unconditional promise or order." Finally, the Debtors appear to argue that Jefferson Federal Bank's failure to accept the Heath Promissory Note was a breach of its fiduciary duty pursuant to Tennessee Code Annotated section 47-3-307 (2001), entitled "Notice of breach of fiduciary duty."

The Debtors, however, are mistaken in their reliance upon these statutes as requiring Jefferson Federal Bank to accept the Heath Promissory Note as payment of the Debtors' obligations. The law in Tennessee concerning 'accord and satisfaction' is clear.

> An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such an agreement.
>
> . . . .
>
> To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner.

> It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction.

*Dobbins v. Dabbs*, 2007 Tenn. App. LEXIS 39, at *19-20 (Tenn. Ct. App. Jan. 25, 2007) (quoting *Lytle v. Clopton*, 261 S.W. 664, 666-67 (Tenn. 1924)); *see also Ward v. Wilkinson*, 1999 Tenn. App. LEXIS 250, at *3-4 (Tenn. Ct. App. Apr. 19, 1999) ("[T]he defendant in breach who asserts the defense of accord and satisfaction bears the burden of proof by a preponderance of the evidence that the contracting plaintiff *agreed* to accept lesser payment rendered in *satisfaction* of the original performance or payment for which the parties contracted.").

In this case, it is without question that Jefferson Federal Bank did not accept the Heath Promissory Note as payment of the Debtors' obligations, nor was it required to. The Debtors were in default, and pursuant to the terms of the Deeds of Trust, a foreclosure sale had been scheduled. Jefferson Federal Bank was within its rights as lienholder to refuse any tender of payment, irrespective of the form, once default occurred. The Debtors' attempt to pay Jefferson Federal Bank through the Health Promissory Note may have been an offer of accord and satisfaction, but the September 1, 2006 letter from Jefferson Federal Bank, through its attorney, Mr. Tilson, clearly established the Bank's unwillingness to accept the terms proposed by the Debtors. Without Jefferson Federal Bank's acceptance, there was not, nor could there be, an accord and satisfaction.

Moreover, the Debtors did not list their accord and satisfaction claim or any other potential claim against Jefferson Federal Bank in their bankruptcy statements and schedules.[8] Thus, the issue of judicial estoppel comes into play. "The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *Johnson v. Lewis Cass Intermediate Sch. Dist. (In re Johnson)*, 345 B.R. 816, 821 (Bankr. W.D. Mich. 2006) (quoting *New Hampshire v. Maine*, 121 S. Ct. 1808, 1814 (2001)) (quoting *Pegram v. Herdrich*, 120 S. Ct. 2143, 2153 n.8 (2000)). It "bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). "An estoppel may arise when a party remains silent under circumstances where there exists a duty to make factual disclosures." *Louden v. Fed. Land Bank of Louisville (In re Louden)*, 106 B.R. 109, 112 (Bankr. E.D. Ky. 1989).

Both of these requirements appear to have been met with respect to the Debtors' allegations concerning Jefferson Federal Bank. First, the fact that they are raising this issue constitutes a position that is contrary to an earlier attested position; namely, their bankruptcy statements and schedules, which were executed under penalty of perjury, evidence no present or potential claims or causes of action against Jefferson Federal Bank for its pre-petition refusal to accept the Heath Promissory Note as payment of the Debtors' obligations. Additionally, the Debtors list Jefferson

---

[8] *See supra* n.4.

Federal Bank as a secured creditor on Schedule D filed with their petition with no indication that any claim asserted by Jefferson Federal Bank is disputed or contingent.

"The disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003). "'[T]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential cause of action.'" *Lewis v. Weyerhaeuser Co.*, 141 Fed. Appx. 420, 424 (6th Cir. July 6, 2005) (quoting *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir. 1999)); *see also Johnson*, 345 B.R. at 822 (citing *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 898 (6th Cir. 2004)) ("It is well settled that causes of action are among the assets that must be disclosed on a debtor's schedules[,]" and the failure to schedule a known cause of action "qualifies as a 'prior position' which is inconsistent with" later attempting to assert it.). "Without such disclosure, the basic system of marshaling of assets and the resulting distribution of proceeds to creditors would be an impossible task." *Louden*, 106 B.R. at 112.

Additionally, this court has adopted the Debtors' earlier position, that it held no claims or causes of action against Jefferson Federal Bank as of December 1, 2006, the date upon which they filed their bankruptcy case, as evidenced by its entry of the January 30, 2007 Agreed Order authorizing Jefferson Federal Bank to proceed with its foreclosure and by its entry of the Debtors' discharge on April 4, 2007. *See Johnson*, 345 B.R. at 822 ("This court implicitly accepted the statements in the Debtor's schedules and statements of financial affairs when it granted her a discharge of debts."); *Louden*, 106 B.R. at 112 ("[T]he debtors' failure to schedule their cause of

Case 3:06-bk-32871-rs   Doc 68   Filed 05/14/07   Entered 05/14/07 16:27:14   Desc
Main Document   Page 19 of 20

action, and their subsequent prosecution of the same cause of action places them in a posture of fundamental inconsistency."). The court agrees that "[w]hen it comes to protecting the integrity of the 'bankruptcy system and the ends it seeks to achieve, the importance of [a debtor's duty to disclose assets] cannot be overemphasized.'" *Johnson*, 345 B.R. at 825 (quoting *Coastal Plains, Inc.*, 179 F.3d at 208).

The court recognizes that "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence[,]" *Johnson*, 345 B.R. at 822; however, the court does not believe that the Debtors' failure to schedule this asserted claim against Jefferson Federal Bank was inadvertent or a mistake. Inadvertence may be deemed if "'the debtor lacks knowledge of the factual basis of the undisclosed claims' or where there is 'no motive for concealment[,]'" *Johnson*, 345 B.R. at 822-23 (quoting *Browning*, 283 F.3d at 776), or "the debtor's failure to disclose occurred in the 'absence of bad faith.'" *Johnson*, 345 B.R. at 823 (quoting *Eubanks*, 385 F.3d at 895)).

In this case, the Debtors did not amend their statements and schedules to reflect their contended claim against Jefferson Federal Bank, and they asserted these allegations after the foreclosures had already taken place. They implied, in their Administrative Notice and Demand for Extension of Time, that they did not wish to file bankruptcy and that their attorney was the one at fault. However, as stated by the court in *Johnson*, "[t]his excuse carries no weight in these circumstances. The Supreme Court has held that a litigant is bound by the errors and omissions of

19

his or her attorney."[9] *Johnson*, 345 B.R. at 824 (citing *Link v. Wabash R.R. Co.*, 82 S. Ct. 1386, 1390 (1962)). The court agrees with the following determination:

> The Debtor signed her bankruptcy petition under penalty of perjury. By doing so, she certified that she has no claims against the Defendants. It was the Debtor's responsibility to verify the accuracy of the information contained in her schedules and statement of financial affairs, and she "had the duty to carefully consider all of the questions posed and to see that they [were] completely and correctly answered.

*Johnson*, 345 B.R. at 825 (quoting *Warsco v. Saylor (In re Case No. 04-14769)*, 339 B.R. 190, 193 (Bankr. N.D. Ind. 2006)).

## V

In summary, for the reasons set forth herein, the Motion for Relief from Judgment shall be denied. An appropriate order will be entered.

FILED: May 14, 2007

        BY THE COURT

        */s/ RICHARD STAIR, JR.*

        RICHARD STAIR, JR.
        UNITED STATES BANKRUPTCY JUDGE

---

[9] The court is not in any way suggesting fault or error on the part of the Debtors' former attorney, who is an experienced bankruptcy practitioner, but is addressing averments made or implied by the Debtors in the Administrative Notice and Demand for Extension of Time. The Debtors' former attorney was allowed to withdraw due to extremely derogatory and caustic statements made in this and other documents filed by the Debtors.